People v Johnson (2019 NY Slip Op 05344)





People v Johnson


2019 NY Slip Op 05344


Decided on July 3, 2019


Appellate Division, Third Department


Garry, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

109364

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ROBERT JOHNSON, Appellant.

Calendar Date: June 4, 2019

Before: Garry, P.J., Egan Jr., Aarons, Rumsey and Pritzker, JJ.


Paul J. Connolly, Delmar, for appellant.
James R. Farrell, District Attorney, Monticello (Meagan K. Galligan of counsel), for respondent.



OPINION AND ORDER
Garry, P.J.
Appeal from a judgment of the Supreme Court (Schick, J.), rendered January 26, 2017 in Sullivan County, upon a verdict convicting defendant of the crime of predatory sexual assault against a child.
Defendant was charged with predatory sexual assault against a child after the victim disclosed that defendant had sexually assaulted her on multiple occasions, beginning in 2011, when she was 10 years old, and continuing until May 2014. Following a jury trial, defendant was convicted as charged. County Court (LaBuda, J.) denied defendant's motion to set aside the verdict pursuant to CPL 330.30, and Supreme Court (Schick, J.) sentenced defendant to a prison term of 25 years to life. Defendant appeals.
Defendant contends that reversal is required because of County Court's error in handling a jury note. It is well established that a trial court's "core responsibility under [CPL 310.30] is both to give meaningful notice to counsel of the specific content of [a substantive jury inquiry] — in order to ensure counsel's opportunity to frame intelligent suggestions for the fairest and least prejudicial response — and to provide a meaningful response to the jury" (People v Silva, 24 NY3d 294, 298-299 [2014] [internal quotation marks and citations omitted]; see People v O'Rama, 78 NY2d 270, 276 [1991]). It has been established that a trial court's failure to comply with the first of these requirements by providing counsel with "notice of the actual specific content of the jurors' request" is a mode of proceedings error that requires reversal and a new trial, even though it may be wholly unpreserved for appellate review (People v Parker, 32 NY3d 49, 59 [2018] [internal quotation marks and citations omitted]; see People v Morrison, 32 NY3d 951, 952 [2018]; People v Mack, 27 NY3d 534, 543-544 [2016]; People v Silva, 24 NY3d at 299-300; People v O'Rama, 78 NY2d at 277).
Here, on the final morning of the trial, following summations and instructions, the jury retired to begin its deliberations. Immediately thereafter, while preparing to leave for a lunch [*2]break, counsel and County Court conducted a very brief discussion in which counsel expressly agreed that the jury could be provided with any trial exhibits that it might request, without the need for further discussion. The next record entry recites that a jury note was marked and received in evidence as Court exhibit No. 1. There is no indication as to when or how this took place, or whether counsel or the court were present. The note, bearing the time 12:30 p.m., states, "We the jury request [a] chronology of events starting with [defendant] dating [the victim's relative]. We would also like the copy of the DNA report."[FN1] The record resumes with the court's announcement, in open court and in the jury's presence, that the jury had informed the court that it had reached a verdict. Thereafter, the court took the verdict and discharged the jury. The last entry in the trial record, following the close of the trial, indicates that "[t]wo jury notes were marked and received in evidence as [c]ourt[] [e]xhibit [Nos.] 2 and 3, this date." Court exhibit No. 2, bearing the time 1:05 p.m., reads, "We the jury have come to a [decision]." Court exhibit No. 3, which bears no time, reads, "We the jury have voted and have decided that he is guilty." The record does not indicate the time at which these court exhibits were marked. There is no reference whatsoever to the first note, other than the single entry in which it was marked as an exhibit.
It is the trial court's "affirmative obligation" to establish on the record that meaningful notice of a jury inquiry has been provided to counsel (People v Silva, 24 NY3d at 300; accord People v Morrison, 32 NY3d at 952), and "we cannot assume that the omission was remedied at an off-the-record conference" to which "the transcript does not refer" (People v Walston, 23 NY3d 986, 990 [2014]). Thus, reversal is required if the record does not expressly establish that meaningful notice was given, even when there is reason to infer that such notice did, in fact, occur (see People v Parker, 32 NY3d at 60). Here, however, we are confronted with a different situation — not only is there no indication that notice was given, on or off the record, but there is also no clear indication as to whether the note was ever conveyed to County Court or whether the court had any reason to suspect its existence.
In our view, it would be unreasonable to find that a trial court incurs a core responsibility to handle a jury note according to the procedures laid out in People v O'Rama (78 NY 270 [1991], supra) if the court neither knows that the note exists nor has any reason to suspect that it might. The Court of Appeals has advised that, "[i]f there [is] uncertainty regarding the number of notes that [have] been forwarded during deliberations, the best practice [is] for the judge to inquire before the verdict [is] announced" (People v Silva, 24 NY3d at 300-301). Such a remedy will be effective where — as was apparently the case in Silva — the numbering of a series of court exhibits, a gap in sequence or some other irregularity provides a reason for uncertainty about jury notes. However, if nothing transpires to suggest to a trial court that a jury note that has not been accounted for may exist, no uncertainty arises, and there is no apparent reason to inquire. A rule by which a court could fail to comply with its core responsibilities and commit a mode of proceedings error by failing to ask a jury whether there are any outstanding notes, even when it has no reason to suspect that such notes might exist, would amount to a requirement that it is a core responsibility of every trial court to make that inquiry of every jury in every trial, just in case — an obligation that our law has never imposed, and that seems to bear little relationship to the underlying purposes that motivate the O'Rama rule. In the absence of such a requirement, when a record is so sparse or so ambiguous that it is impossible to tell whether a trial court knew or even had reason to know that a jury note was outstanding, it is likewise impossible to determine whether the trial court's responsibilities pursuant to CPL 310.30 have been triggered by a jury communication.
We are confronted with such a record here. The People argue that the note was marked and received just before the lunch break, when counsel and County Court were still present. The [*3]record allows for that possibility, but, in the absence of any information as to how and by whom the note was marked, it also permits the reasonable conclusion that the note was marked during the lunch break, in the absence of counsel and perhaps also, and critically, in the absence of the court. There is no indication as to what transpired when the break ended, whether the note was then given to the court and, if not, whether anything about the circumstances should have alerted the court to its presence. The second and third notes, like the first, are never discussed on the record,[FN2] so the circumstances by which they were apparently communicated to the court before they were marked as court exhibits are undisclosed. Further, as it appears that the second and third notes were not marked as exhibits until after the end of the trial, nothing about their numbering would necessarily have served to alert the court — if it did not know about the first note — to the possibility that a note was missing or had been overlooked.
We find this case similar to People v Meyers (___ NY3d ___, 2019 NY Slip Op 03658 [2019]), in which the Court of Appeals addressed the circumstance where a purported jury note that had been marked as a court exhibit was discovered in the court file after the trial, presenting circumstances suggesting that it may have been a draft that the jury discarded or chose not to submit to the trial court. The Second Department held the appeal in abeyance and remitted the matter to the trial court for a reconstruction hearing to assess the related circumstances and determine whether the document was, in fact, a jury note (People v Meyers, 148 AD3d 1057, 1057 [2017]). The trial court conducted the hearing and determined that the document "was a draft or derelict note that was discarded by the jury and never submitted to the court" (People v Meyers, 2019 NY Slip Op 03658 at *2). The Court of Appeals affirmed, noting that the purpose of the reconstruction hearing was not to determine whether counsel had received meaningful notice — an objective for which such hearings are impermissible (see People v Parker, 32 NY3d at 62) — but instead, to determine whether the document was a jury request within the scope of CPL 310.30 and, thus, whether the trial court's responsibilities pursuant to that statute and O'Rama had been triggered in the first instance (People v Meyers, 2019 NY Slip Op 03658 at *2).
Here, as in Meyers, we are presented with a scanty and ambiguous record, precluding this Court from determining whether County Court's core responsibilities were triggered by its knowledge of the note or by circumstances that should have alerted the court to its presence. Accordingly, we remit the matter for a hearing to assess the circumstances pertaining to the events at trial during the jury's deliberations and the acceptance of its verdict, including the transmission, receipt, marking and communication to the court of all three notes, and for a report to this Court setting out the court's findings. We will hold the appeal in abeyance and decide no other issues pending the timely completion of that process.
Egan Jr., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the decision is withheld, and matter remitted to the Supreme Court for further proceedings not inconsistent with this decision.



Footnotes

Footnote 1: The "DNA report" was a trial exhibit, and thus could have been provided to the jury in accord with counsel's agreement. The request for a chronology, however, did not involve an exhibit, dealt with a "matter pertinent to the jury's consideration of the case" and was thus a substantive inquiry (CPL 310.30).

Footnote 2: Defendant makes no claim of error related to the second and third jury notes.