# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1258**

**KA 09-00310**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, NEMOYER, AND SCUDDER, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                           MEMORANDUM AND ORDER

WILLIAM MORRISON, DEFENDANT-APPELLANT.

---

MARY R. HUMPHREY, NEW HARTFORD, FOR DEFENDANT-APPELLANT.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (TIM WU OF COUNSEL), FOR RESPONDENT.

-----------------------------------------------------------------------------------

Appeal from a judgment of the Oneida County Court (Michael L. Dwyer, J.), rendered April 18, 2007. The judgment convicted defendant, upon a jury verdict, of rape in the first degree, sexual abuse in the first degree and endangering the welfare of a vulnerable elderly person in the second degree.

It is hereby ORDERED that the judgment so appealed from is reversed on the law and a new trial is granted on counts one through three of the indictment.

Memorandum: On a prior appeal, we affirmed the judgment convicting defendant upon a jury verdict of rape in the first degree (Penal Law § 130.35 [1]), sexual abuse in the first degree (§ 130.65 [1]), and endangering the welfare of a vulnerable elderly person in the second degree (former § 260.32 [4]) (*People v Morrison*, 90 AD3d 1554, *lv denied* 19 NY3d 1028, *reconsideration denied* 20 NY3d 934). We subsequently granted defendant's motion for a writ of error coram nobis on the ground that appellate counsel had failed to raise an issue that may have merit, i.e., whether County Court erred in failing to comply with CPL 310.30 in its handling of jury notes (*People v Morrison*, 128 AD3d 1424), and we vacated our prior order. We now consider the appeal de novo.

We agree with defendant that the court violated a core requirement of CPL 310.30 in failing to advise counsel on the record of the contents of a substantive jury note, and thereby committed reversible error (*see People v Mack*, 27 NY3d 534, 538; *People v Silva*, 24 NY3d 294, 299-300, *rearg denied* 24 NY3d 1216; *People v O'Rama*, 78 NY2d 270, 277-278). The record establishes that a jury note marked as court exhibit 8 stated that "[w]e have made decision on the Third Count we are having hard time with 1 and 2 just giving you are [sic] status." Soon thereafter, a jury note marked as court exhibit 9 stated that "[w]e have arrived on decision on 2 and 3, but we have a

lot of work to do on #1.  I don[']t see it being quick.  Not sure what to do.  We ars [sic] starting to make way."

It is well settled that, "when the trial court fails to provide counsel with meaningful notice of a substantive jury note, a mode of proceedings error has occurred and reversal is required" (*Mack*, 27 NY3d at 538).  Here, the record establishes that the court brought the jury into the courtroom but did not read court exhibits 8 and 9 into the record, contrary to the procedure it employed with the previous notes sent by the jury.  The court then instructed the jury to continue working to try to reach a unanimous verdict.  We agree with the People that CPL 310.30 did not apply to court exhibit 8 inasmuch as the jury was not requesting "further information or instruction" (*People v Collins*, 99 NY2d 14, 17), but we agree with defendant that court exhibit 9 was a substantive jury note requiring notice to defense counsel (*see People v Kisoon*, 8 NY3d 129, 135; *People v Victor*, 139 AD3d 1102, 1108-1109, *lv denied* 28 NY3d 1076).  Thus, defense counsel was "deprived . . . of the opportunity to accurately analyze the jury's deliberations and frame intelligent suggestions for the court's response" (*Kisoon*, 8 NY3d at 135).

We reject the People's contention, and disagree with our dissenting colleague, that the jury's inquiry was merely ministerial (*cf. Mack*, 27 NY3d at 537 n 1).  Our dissenting colleague concludes that the jury's statement, "[n]ot sure what to do," was a ministerial inquiry concerning the logistics of the jury's deliberations, i.e., the jury was asking whether it should continue deliberating that evening considering the late hour.  We agree that the note could be interpreted that way, but we conclude that it also could be interpreted as it was interpreted by the court, i.e., the jury was having difficulty reaching a unanimous verdict and was making a substantive inquiry for guidance concerning further deliberations.  In response to the note, the court issued an *Allen*-type charge.  Quite simply, even if we consider all the surrounding circumstances, the jury note was ambiguous, and we must resolve that ambiguity in defendant's favor (*see People v Johnson*, 64 NY2d 617, 618 n 2; *People v O'Donnell*, 2 AD2d 971, 971; *see also People v Thompson*, 26 NY3d 678, 687-688).

We also reject the People's contention that "special circumstances," i.e., the presence of media in the courtroom, justified the departure from the *O'Rama* procedures (*O'Rama*, 78 NY2d at 278).  There are no special circumstances that would excuse a court from failing to give notice to defense counsel of the contents of a substantive jury note (*see generally Mack*, 27 NY3d at 538).  Finally, contrary to the People's contention, "[w]here a trial transcript does not show compliance with *O'Rama*'s procedure as required by law, we cannot assume that the omission was remedied at an off-the-record conference that the transcript does not refer to" (*People v Walston*, 23 NY3d 986, 990; *see People v Owens*, 144 AD3d 1510, 1510-1511).  The presumption of regularity cannot be applied when the alleged error is that the court failed to apprise defense counsel of the contents of a jury note, and the record "must indicate compliance with adequate

procedures under *O'Rama*" (*Silva*, 24 NY3d at 300).  We therefore
reverse the judgment and grant a new trial on counts one through three
of the indictment.  In light of our determination, there is no need to
address defendant's remaining contentions.

All concur except PERADOTTO, J., who dissents and votes to affirm
in accordance with the following memorandum:  I respectfully dissent.
In my view, the *O'Rama* procedure was not implicated because the jury
note marked as court exhibit 9 was ministerial in nature, and
defendant was therefore required to preserve his challenge to County
Court's handling of that jury note.  There is no basis to exercise
this Court's discretion in the interest of justice to address
defendant's unpreserved contention.  I would thus affirm the judgment
of conviction.

Criminal Procedure Law § 310.30 provides that a deliberating jury
"may request the court for further instruction or information with
respect to the law, with respect to the content or substance of any
trial evidence, or with respect to any other matter pertinent to the
jury's consideration of the case.  Upon such a request, the court must
direct that the jury be returned to the courtroom and, after notice to
both the people and counsel for the defendant, and in the presence of
the defendant, must give such requested information or instruction as
the court deems proper."  The statute thus "imposes two
responsibilities on trial courts upon receipt of a substantive note
from a deliberating jury: the court must provide counsel with
meaningful notice of the content of the note, and the court must
provide a meaningful response to the jury" (*People v Mack*, 27 NY3d
534, 536, *rearg denied* 28 NY3d 944; *see People v Nealon*, 26 NY3d 152,
155-156; *People v O'Rama*, 78 NY2d 270, 276-277).  The statute,
however, "does not require notice to defendant in every instance of
communication from the jury to the court" (*People v Lykes*, 81 NY2d
767, 769).  Rather, "[t]he *O'Rama* procedure is implicated whenever the
court receives 'a *substantive* written jury communication,' " but that
procedure "is not implicated when the jury's request is ministerial in
nature and therefore requires only a ministerial response" (*Nealon*, 26
NY3d at 161; *see People v Mays*, 20 NY3d 969, 971; *People v Ochoa*, 14
NY3d 180, 188).

An inquiry is substantive, and thus triggers the court's
obligations under *O'Rama*, "when a deliberating jury requests further
instruction or clarification on the law, trial evidence, or any other
matter relevant to its consideration of the case" (*People v Rivera*, 23
NY3d 827, 831; *see People v Collins*, 99 NY2d 14, 17).  An announcement
by the jury that it is deadlocked—which is effectively a request that
it be relieved of the duty to resolve the trial issues, thereby
requiring further instruction by the court—is also a substantive
inquiry (*see e.g. People v Kisoon*, 8 NY3d 129, 132; *O'Rama*, 78 NY2d at
275, 275 n 2; *People v Lockley*, 84 AD3d 836, 838, *lv denied* 17 NY3d
807; *see generally* CPL 310.60).

In contrast, an inquiry is ministerial if it is "wholly unrelated
to the substantive legal or factual issues of the trial" (*People v
Harris*, 76 NY2d 810, 812; *see People v Hameed*, 88 NY2d 232, 241, *cert*

*denied* 519 US 1065; *People v Gruyair*, 75 AD3d 401, 402-403, *lv denied*
15 NY3d 852).  Inquiries concerning " 'the logistics of the
deliberative process,' " such as questions about scheduling and
requests for breaks (*People v Bonaparte*, 78 NY2d 26, 30; *see Mack*, 27
NY3d at 537 n 1; *see generally People v Brito*, 135 AD3d 627, 627, *lv
denied* 27 NY3d 1066; *People v Backus*, 184 AD2d 231, 231, *lv denied* 80
NY2d 926), are " 'not the kind of substantive [requests] that
implicate[] O'Rama' " (*People v Wallace*, 27 NY3d 1037, 1039, quoting
*Mays*, 20 NY3d at 971; *see Gruyair*, 75 AD3d at 403; *People v McDowell*,
15 AD3d 840, 840, *lv denied* 5 NY3d 791).

     There are two jury notes at issue in this case.  The note marked
as court exhibit 8 stated:  "We have made decision on the Third Count
we are having hard time with 1 and 2 just giving you are [sic]
status."  The jury note marked court exhibit 9 stated:  "We have
arrived on decision on 2 and 3, but we have a lot of work to do on #1.
I don[']t see it being quick.  Not sure what to do.  We ars [sic]
starting to make way."  Preliminarily, I agree with the People and the
majority that court exhibit 8 did not constitute an inquiry at all
inasmuch as it was merely a status update, i.e., it did not request
any "further information or instruction" (*Collins*, 99 NY2d at 17).
Contrary to the majority's determination, however, even assuming,
arguendo, that court exhibit 9 constituted an inquiry, I conclude that
it was ministerial in nature because, viewing the text of the note in
the context of all the surrounding circumstances (*see People v Taylor*,
26 NY3d 217, 225-226; *People v Mitchell*, 46 AD3d 480, 480, *lv denied*
10 NY3d 842), it unambiguously concerned only the logistics of the
deliberative process.

     Here, at 4:00 p.m. on the first day of deliberations, i.e., the
day prior to date of the notes at issue on appeal, the court informed
the jury that the building usually closed at 4:30 p.m. and provided
the jury with the choice of deliberating until 4:45 p.m. or breaking
for the night and continuing the next morning.  The court then asked
the jury to send out a note at 4:30 p.m. advising whether it would
reach a verdict in the remaining time or whether it wished to break
for the night.  The jury subsequently sent out a note indicating that
it would not be able to reach a verdict that evening and requesting to
come back in the morning.  The court read that note into the record
and instructed the jury that it would break until the following
morning.  The jury continued deliberations the following day beginning
at 9:00 a.m., and the jury sent out various notes throughout the day.

     The jury notes at issue here were received and addressed by the
court at 4:52 p.m.  Court exhibit 8 gave a status update, and court
exhibit 9 followed up by indicating that the jury had reached a
decision on two of the three counts and was starting to make way with
respect to the top count, i.e., rape in the first degree (Penal Law
§ 130.35 [1]), although it did not expect resolution of that count to
be quick.  In the presence of defendant, defense counsel and the
prosecutor, the court responded by declining to read the notes on the
record as it had done with previous notes sent by the jury.  Instead,
after noting its appreciation for the hard work that the jury had put

in throughout the proceedings, the court provided an *Allen*-type instruction expressing hope that the jury would eventually reach a unanimous verdict. The court continued by mentioning that the jury had been deliberating all day, and that the court would adjourn until the morning if the jurors thought that breaking for the evening would be helpful as opposed to continuing for another hour. The court further discussed that the weather report was calling for poor conditions overnight, and requested that the jurors discuss their options. The jury promptly responded with a note marked as court exhibit 10 indicating that it did not believe that it would be able to come to a unanimous decision in the next hour and preferred to come back in the morning at 10:00 a.m. when the weather would be clear.

Contrary to the majority's conclusion, considering the full text of court exhibit 9 and all of the surrounding circumstances, "the only reasonable interpretation" (*Mitchell*, 46 AD3d at 480) of the jury's statement that it was "[n]ot sure what to do" is that the inquiry concerned the logistics of the jury's deliberations. The clause was immediately preceded by a reference to the amount of work to be done on the top count and immediately followed by the jury's indication that it was beginning to make progress. Consistent with the late hour and the court's practice of giving the jury a choice of whether to break for the evening or continue deliberating based on the status of the jury's deliberations, the record establishes that the jury raised a question of scheduling when it indicated that it was "[n]ot sure what to do." The jury was asking whether to continue deliberating or break for the evening given that it had not yet come to a decision on the top count and anticipated needing additional time to reach a verdict even though it was starting to make progress. The jury note did not request the court's assistance on the ground that the jury was hopelessly deadlocked, and thus the majority's reliance on *Kisoon* is misplaced (*cf.* 8 NY3d at 132; *O'Rama*, 78 NY2d at 275, 275 n 2). Nor did the jury otherwise indicate that it was at an impasse or a standstill (*cf. People v Cook*, 85 NY2d 928, 930; *People v Dame*, 144 AD3d 1625, 1625). There is thus no basis in the record to support the majority's interpretation that "the jury was having difficulty reaching a unanimous verdict and was making a substantive inquiry for guidance concerning further deliberations." To the contrary, the note conveyed that the jury was making progress, but had much work to do with regard to the top count and, therefore, felt it necessary to express its uncertainty whether it should continue deliberating or break for the evening. The inquiry was ministerial inasmuch as it concerned " 'the logistics of the deliberative process' " (*Bonaparte*, 78 NY2d at 30), and was " 'wholly unrelated to the [remaining] substantive legal [and] factual issue[] of the trial,' " (*Hameed*, 88 NY2d at 241), i.e., whether defendant had engaged in sexual intercourse with the victim by forcible compulsion (*see* Penal Law § 130.35 [1]). The jury's inquiry "bore no substantial relationship to . . . defendant['s] opportunity to defend against the charges" (*Hameed*, 88 NY2d at 241).

The majority's reliance on *People v Victor* (139 AD3d 1102, 1108-1109, *lv denied* 28 NY3d 1076) is misplaced. In that case, the jury sent out a note stating that " 'we have reach[ed] agreement on 9 of

the 10 charges # 8G 4NG' " (*id.* at 1108). Shortly thereafter, the jury sent another note stating, "Ready" (*id.*). When discussing the first jury note with counsel, however, the court indicated only that the jury had reached agreement on nine out of the ten charges and excluded mention of the clause at the end of the note (*see id.*). The Third Department concluded that the court committed a mode of proceedings error on the ground that the court failed to meet its "affirmative obligation to read [the first jury note] verbatim so that the parties had the opportunity to accurately analyze the jury's question and frame intelligent suggestions for the court's response" (*id.* at 1109). In support of its implicit determination that the note was substantive and triggered the court's *O'Rama* obligations, the Third Department cited *People v Silva* (24 NY3d 294, 299, *rearg denied* 24 NY3d 1216) and *Kisoon* (8 NY3d at 134), which involve jury notes indicating deadlock, requesting instruction on the law, and making other substantive inquiries. Significantly, as counsel discussed in *Victor*, the jury note in that case raised the prospect that the jury was attempting to render a partial verdict upon being deadlocked on the last count (*see* 139 AD3d at 1108-1109; *see generally* CPL 310.70)—apparently, in my view, by a vote of eight guilty (G) and four not guilty (NG). As discussed in detail above, that is simply not true in the case before us. Although the jury here provided a further status update to the court on its progress with respect to two of the counts, it also affirmatively indicated that it was moving forward with its deliberations on the top count. Thus, both the text of court exhibit 9 and the particular surrounding circumstances here are distinguishable from those in *Victor* and, contrary to the majority, I am not convinced that the implicit determination of a substantive inquiry in that case serves as persuasive authority to be applied to the facts of this case.

To the extent that the court provided a more robust response to the jury note than was required, I agree with the People that the court could not transform a ministerial inquiry regarding the logistics of a productive, continuing deliberation into a substantive deadlock announcement by merely exercising caution and reiterating the jury's deliberative obligations. Nor is the court's prudence indicative of an ambiguity. The text and surrounding circumstances establish that the inquiry itself was ministerial and thus the court's failure to follow the *O'Rama* procedure at that point, as it had done with the jury's prior substantive notes, was not a mode of proceedings error.

Finally, I have examined defendant's remaining contentions and conclude that none requires modification or reversal of the judgment.

Entered: March 24, 2017                    Frances E. Cafarell
                                           Clerk of the Court